UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JPMORGAN CHASE BANK, N.A. and
J.P. MORGAN SECURITIES, INC.,

          Plaintiffs,

v.

DAVID G. CLARK, TABB M. WILE,
VIRGINIA A. WISELY, JOHN R. BULLER,
BRETT M. BERES, and DAVID J. RUNYON,

          Defendants.

Case No. 09-13815
Honorable Julian Abele Cook, Jr.


ORDER

On September 28, 2009, the Plaintiffs, JPMorgan Chase Bank, N.A. and J.P. Morgan

Securities, Inc., filed a complaint in which they accused the Defendants, David G. Clark, Tabb M.

Wile, Virginia A. Wisely, John R. Buller, Brett M. Beres, and David J. Runyon of violating their

contractual and ethical obligations to avoid, *inter alia,* the misappropriation of confidential client

information to any business competitor.  On the same date, the Plaintiffs also filed a motion in an

effort to obtain a temporary restraining order, a preliminary injunction, as well as an order that will

create an expedited discovery schedule for the respective parties.  The Defendants filed a response

in opposition on the same day.

I.

The Plaintiffs are subsidiaries of JPMorgan Chase & Co., a large banking institution with

offices across the country and its principal place of business in New York, New York.  According

1

to the Plaintiffs, they provide banking, investment, and trust and estate services to customers throughout the nation including the metropolitan area of Detroit, Michigan.

In their complaint, the Plaintiffs assert that the Defendants had been employed as financial advisors until September 25, 2009 when all of them voluntarily terminated their employment tenure and immediately thereafter joined the work force of a competitor, Morgan Stanley, in the same or similar employment capacities. The Plaintiffs also maintain that these Defendants wrongfully garnered confidential client information and utilized it to solicit new clients. Feeling aggrieved, the Plaintiffs filed the instant lawsuit.

## II.

In 2006, the Sixth Circuit Court of Appeals reiterated the long-standing factors that courts must consider when determining whether to grant injunctive relief; namely, (1) the movant's likelihood of success on the merits, (2) if the movant will suffer irreparable harm without the issuance of an injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) the impact of the injunction on the public interest. *Abney v. Amgen*, *Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) (citing *Deja Vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson Co.*, 274 F.3d 377, 400 (6th Cir. 2001)). "In making its determination, the district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006).

## A.

In this case, the Plaintiffs submit that they are likely to succeed on the merits because all of the Defendants entered into separate "Supervision, Confidentiality, and Non-Solicitation Agreements" at the commencement of their respective employments wherein they agreed, among

other things, not to solicit their then-current employer's clients for a period of one year following

the termination of employment.   Moreover, it is their contention that this confidential client

information, about which they complain, constitutes a trade secret under Michigan law.

In their opposition pleading, the Defendants contend that the names, addresses, and

telephone numbers of the clients which have been targeted by the Plaintiffs are not trade secrets

under Michigan law.  Furthermore, the Defendants, while acknowledging that they have contacted

their former clients, insist that its purpose was only to announce the cessation of employment with

the Plaintiffs, but not to solicit business.

> The Michigan Uniform Trade Secrets Act defines a trade secret as:
>
> [I]nformation, including a formula, pattern, compilation, program, device, method,
> technique, or process, that is both of the following:
> (i)   Derives independent economic value, actual or potential, from not being
> generally known to, and not being readily ascertainable by proper means by, other
> persons who can obtain economic value from its disclosure or use.
> (ii)  Is the subject of efforts that are reasonable under the circumstances to maintain
> its secrecy.

Mich. Comp. Laws § 445.1902(d).  The Michigan Supreme Court has held that "there is nothing

improper in an employee establishing his own business and communicating with customers for

whom he had formerly done work in his previous employment."  *Hayes-Albion v. Kuberski*, 421

Mich. 170, 183 (1984).  However, "an employer may have a protectable interest in information

about client needs that an employee gains by virtue of his employment."  *Id.* at 184.

Based on the arguments and information within the parties' briefs, the Court believes that

the information which the Defendants have utilized constitutes a presumptive trade secret.  While

the Defendants are correct in asserting that an individual's address and telephone number may be

easily obtained through the internet or telephone book, the identity of a client and his or her

financial needs is not.  As such, the Court determines, for purposes of the Plaintiffs' request for a temporary injunction only, that they have shown a likelihood of success on the merits on their claim of misappropriation of a trade secret.

Even if the client information which was referenced by the parties does not constitute a trade secret under Michigan law, the Court is nevertheless satisfied that the Plaintiffs have shown that they are likely to succeed on the merits with respect to their breach of contract claim.  The Defendants do not deny (1) having entered into non-solicitation agreements[1] or (2) contacting clients whose accounts had been handled by them while working for the Plaintiffs.  These non-solicitation agreements stated, in pertinent part, that any employee, or former employee, of the Plaintiffs cannot use confidential information, including "confidential customer data, including but not limited to customer and prospect names, addresses, phone numbers, [etc.]" for their "own benefit or for the benefit of a third party."  Based on the language in this agreement, and the preliminary representations by the parties, it appears that the Defendants have used the confidential information (as defined in the non-solicitation agreements) for their benefit (i.e., to announce to their clients that they are no longer employed by the Plaintiff and, most probably, to encourage the clients to transfer their accounts to Morgan Stanley).  Hence, the Court concludes that the Plaintiffs have shown a likelihood of success on the merits with respect to their breach of contract claim.

B.

---

[1]Moreover, Michigan law has explicitly sanctioned agreements or covenants "which protect[] an employer's reasonable competitive business interests and expressly prohibit[] an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business."  Mich. Comp. Laws § 445.774a(1).

The Plaintiffs also assert that (1) they have no adequate remedy at law and (2) they will suffer irreparable harm if their request for a temporary restraining order is not granted. They submit that it is "extremely difficult" to identify the degree of economic detriment which will be sustained by them from the loss of clients, goodwill, and client confidence. The Defendants deny these allegations, insisting that they have not "taken any confidential or nonpublic information and have not in any way impaired [the Plaintiffs'] ability to aggressively solicit these clients." Moreover, they maintain that any damages which the Plaintiffs claimed to have been caused by a loss of clients can be easily determined because the revenue generated by each client is known for each account.

Although the revenue garnered for each client account may be readily determinable, the Defendants have not addressed another legitimate claim in the complaint (i.e., clients may lose confidence in the ability of the Plaintiffs to maintain control over confidential information). The Sixth Circuit Court of Appeals has held that "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The court further opined that the "loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Id.* Thus, based on the Plaintiffs' claims that they have suffered or will suffer the loss of client confidence, as well as incalculable losses, the Court concludes that the Plaintiffs have satisfactorily shown the probability of an irreparable harm in the absence of injunctive relief.

## C.

The Plaintiffs further assert that the benefit of injunctive relief will outweigh any possible

detriment to the Defendants. In their opposition papers, the Defendants argue that the hardship that they will face if an injunction is issued by the Court would outweigh any fiscal burdens on the Plaintiffs who allegedly possess $13.7 trillion in assets.

Having reviewed the respective positions of the parties, the Court believes that, inasmuch as the relief sought by the Plaintiffs would be in effect only until the hearing for preliminary injunction, this temporary injunctive relief will not cause any substantial harm to the Defendants. On the other hand, if the requested temporary restraining order is rejected, the confidential client information which the Plaintiffs seek to protect may have already been disclosed prior to the convening of a preliminary injunction hearing. Thus, the Court concludes that the issuance of a temporary injunction will not cause significant harm to the Defendants. However, without an injunction, the Plaintiffs could suffer an irreparable harm.

D.

Finally, the Plaintiffs contend that the injunctive relief which they seek would advance the public interest in the enforcement of contractual agreements and the protection of investments by businesses in the development of their client base. The Defendants submit that an injunction would harm the public interest because it would restrict a client's right to work with the financial advisor of their choosing.

The Court concludes that this factor does not clearly militate in favor of, or against, the position of either party. The Court believes that each party has set forth legitimate concerns that can be more fully explored at the preliminary injunction hearing.

III.

With respect to the Plaintiffs' request for expedited discovery, the Court directs the parties

6

to commence discovery forthwith in aid of their preparation for the preliminary injunction hearing.

IV.

For the reasons which have stated above, the Court grants the Plaintiffs' request for a temporary restraining order which will expire after the expiration of a period of ten days or until further order of the Court, whichever occurs sooner.  Pursuant to Fed. R. Civ. P. 65(c),[2] the Plaintiffs shall post security in the amount of $100,000 not later than October 1, 2009.

Furthermore, the Defendants and all those acting in concert with them, are temporarily enjoined and restrained from:

(a) soliciting, attempting to solicit, or attempting to induce any customers, whose accounts had been handled by the Defendants during their employment with the Plaintiffs, to transfer their assets to a competing business entity;

(b) disclosing or attempting to disclose confidential client information to any person or business enterprise without the express consent of the Plaintiffs; and

(c) using, disclosing or transmitting documents, materials and/or confidential and proprietary information pertaining to the Plaintiffs, their employees, and/or clients.

Finally, the Defendants are directed to immediately return, release and surrender all lists, records, documents, and/or information to the Plaintiffs or their counsel (original, copied, computerized, electronically stored, or handwritten material), which pertain to their clients on or before September 30, 2009.

---

[2] Fed. R. Civ. P. 65(c) provides, in pertinent part: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

The parties shall appear before this Court on October 5, 2009 at 1:00 p.m. for a hearing relating to the Plaintiffs' motion for a preliminary injunction.  Inasmuch as the Defendants have already submitted their response to the pending motion, the Plaintiffs are authorized to file a reply not later than Wednesday, September 30, 2009 at 5:00 p.m.


IT IS SO ORDERED.



Dated:  September 29, 2009                          S/Julian Abele Cook, Jr.
        Detroit, Michigan                          JULIAN ABELE COOK, JR.
                                                   United States District Court Judge



<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 29, 2009.


                                          s/ Kay Doaks
                                          Case Manager